**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CORONDA S. SANDERS,

          *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL
SECURITY,

          *Defendant*.

_____/

CASE NO. 2:18-cv-12399

DISTRICT JUDGE ARTHUR J. TARNOW
MAGISTRATE JUDGE PATRICIA T. MORRIS

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (R. 16 & 19)**

## I.  RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (R. 16), be **DENIED**, the Commissioner's Motion for Summary Judgment, (R. 19), be **GRANTED**, and this case be **AFFIRMED**.

## II.  REPORT

### A.  Introduction and Procedural History

This is an action for judicial review of a final decision by the Commissioner of Social Security denying Plaintiff Coronda Sanders's claim for Disability Insurance Benefits (DIB) under Title II, 42 U.S.C. § 401 *et seq.* (R. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred

1

to the undersigned Magistrate Judge. Currently before the Court are Plaintiff's and Defendant's cross-motions for summary judgment (R. 16, 19).

Plaintiff filed the application for DIB on May 10, 2016, alleging onset on January 21, 2015. (R.12 at PageID.165.) Her claim was denied at the initial level on July 13, 2016. (R.12 at PageID.96.) After an administrative hearing was held at Plaintiff's request, (R.12 at PageID.60), Administrative Law Judge (ALJ) Latanya White Richards issued a decision finding that Plaintiff had not been under a disability from her alleged onset date of January 21, 2015, through the date of the decision, February 27, 2018. (R.12 at PageID.56.) The Appeals Council denied Plaintiff's request for review. (R.12 at PageID.38-40.) This action followed. (R. 1.)

### B.  Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker*

2

*v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*.

### C. Framework for Disability Determinations

Under the Act, "DIB . . . [is] available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).   The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets

3

or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered him or her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

4

### D.  ALJ Findings

Following the five-step sequential analysis, at step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2020, and had not engaged in substantial gainful activity since January 21, 2015, the alleged onset date. (R.12 at PageID.49.) Next, the ALJ determined Plaintiff had the following severe impairments: status post-fracture of the proximal tibia, pelvis, and right distal femur, and obesity. (*Id.*) Plaintiff did not, however, have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (R.12 at PageID.50-51.) The ALJ found that Plaintiff could not perform any past relevant work. (R.12 at PageID.55.) Finally, the ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R 404.1567(a) and 416.967(a), except that she could

> occasionally climb ramps and stairs, but cannot climb ladders or scaffolds, kneel, crouch, or crawl; occasionally stoop; must avoid use of hazardous machinery and exposure to unprotected heights; avoid balancing on narrow, slippery, or moving surfaces; no commercial driving; requires a cane for ambulation; and needs a sit or stand option at will while remaining on task.

(R.12 at PageID.51.) The ALJ further found that jobs that she could perform existed in significant numbers in the national economy. The ALJ noted that the vocational expert's (VE's) testimony was consistent with the Dictionary of Occupational Titles (DOT) but that the DOT is silent on use of a cane and the need for a sit or stand option. (R.12 at PageID.56.)

### E.  Administrative Record

#### 1.  Medical Evidence

The Court has reviewed Plaintiff's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

#### 2.  Application Reports and Administrative Hearing

##### i.  Plaintiff's Function Report

Plaintiff competed an adult function report on June 2, 2016. (R.12 at PageID.196-203.) In the report, Plaintiff indicated that she is able to care for her personal needs except that she needs help putting on her right shoe and socks, and she uses a commode because a regular toilet is too low. (R.12 at PageID.197.) She does not need any special reminders and is able to cook frozen meals and make sandwiches on a daily basis for between thirty minutes to one hour. (R.12 at PageID.198.) Although Plaintiff can wipe counters and sinks, she needs help taking the trash out, vacuuming, and dusting. (R.12 at PageID.198.) She does not do yard work because she "can't stand long enough." (R.12 at PageID.199.) Plaintiff does not drive but is able to ride in a car, and she shops in stores for household items once a week for about one hour at a time. (R.12 at PageID.199.) Plaintiff does not need any help with finances. (*Id*.) Plaintiff indicated she does not have any hobbies and was unsure whether there have been any changes in such activities since her conditions began. (R.12 at PageID.200.) Plaintiff socializes by going to appointments, to the store, and to church. (*Id*.) Plaintiff indicated that she "stay[s] home more now due to my physical disability to get out and also due to the pain I suffer on a daily basis." (R.12 at PageID.201.)

6

Plaintiff has no difficulties paying attention or dealing with authority figures or co-workers. (R.12 at PageID.201-02.) Plaintiff summarized that the hardware in her right leg "prevents it from bending correctly at the knee, it lock[s] at a point and it will not move any farther. The pain I suffer from some days will not allow me to get out of bed. Sometimes for several hours until the pain clams down." (R.12 at PageID.203.)

### ii.    Plaintiff's Testimony at the Hearing

An administrative hearing was held in Plaintiff's case on September 27, 2017. (R.12 at PageID.60-86.) Plaintiff testified that she is 5 feet, 3 inches tall and weighs 240 pounds. (R.12 at PageID.65.) Plaintiff has a driver's license and drove herself to the hearing; she also drives to her doctors' appointments and the store. (R.12 at PageID.66.) Plaintiff lives alone in an apartment and received workers compensation benefits until May of 2017. (R.12 at PageID.66-67, 73.) Plaintiff's alleged onset date (January 21, 2015) corresponds to the date she was involved in a car accident which resulted in a hospitalization and two months of rehabilitation. (R.12 at PageID.67-68.) Before her accident, Plaintiff worked as a group home manager, caring for the developmentally disabled. (R.12 at PageID.68.) Plaintiff suffered a broken pelvis, a degloving injury, and has "a lot of metal in [her] right leg, like, from the ankle to the hip, a lot of metal." (R.12 at PageID.69.) Plaintiff followed up with physical therapy for some time and she currently takes pain medications. (R.12 at PageID.69-70.) Plaintiff indicated that she sometimes gets drowsy because of the medication. (R.12 at PageID.70-71.) Plaintiff is able to cook light meals and grocery shop but needs help from her family with vacuuming, laundry, and other cleaning. (R.12 at PageID.71-72.)

Plaintiff estimated that she could stand comfortably for about 15-20 minutes, sit comfortably for "at least 30 minutes," and walk for about half of a city block. (R.12 at PageID.73-75.) Plaintiff stated that she uses a cane "for distance" but "can move around the house without it." (R.12 at PageID.75.) Plaintiff's hypertension is under control with medications and her CPAP machine has resolved her sleep apnea issues. (R.12 at PageID.75-76.)

Pursuant to her attorney's questions, Plaintiff testified that because of scar tissue in her knee, she cannot bend her knee beyond 60 degrees, making it very difficult to pick things off the floor. (R.12 at PageID.76-78.) Her pelvic pain is worsened by sitting too long so she lies down "between five and six times" for "20 to 30 minutes" per day to relieve the pain. (R.12 at PageID.78-79.) Plaintiff was prescribed and uses a shower chair. (R.12 at PageID.79.) Plaintiff sometimes misses church because she is very stiff, "like, paralyzed for a while" in the morning due to pain. (R.12 at PageID.80.) Plaintiff's doctor told her, as to pelvic pain, "pretty much I am where I'm going to be with that." (R.12 at PageID.81.)

### iii.    The Vocational Expert's Testimony at the Hearing

VE Don Harrison also testified at the hearing. (R.12 at PageID.82-85.) He began by classifying Plaintiff's past work as a group home manager as heavy, SVP 5. (R.12 at PageID.82.) Then the ALJ posed the first hypothetical:

> a hypothetical individual of the Claimant's age education with that past work you described. Please assume the individual is limited to sedentary work. They can occasionally climb ramps and stairs, but cannot climb ladders or scaffolds. They cannot kneel, crouch, or crawl. They can occasionally stoop. They must avoid use of hazardous machinery and exposure to unprotected heights, and avoid balancing on narrow, slippery, or moving surfaces. And they - - and no commercial driving.

(R.12 at PageID.83.) The VE testified that such a person could not perform any of Plaintiff's past relevant work. (R.12 at PageID.83.) The VE also stated that such a person could perform other jobs in the national economy such as bench assembler, DOT 739.687-066 (75,000 jobs), optical inspector, DOT 716.687-030 (70,000 jobs), and surveillance monitor, DOT 379.367-010 (63,000 jobs). (*Id*.) When asked if those jobs would also be available for someone who also needed a cane to ambulate and an option to sit or stand at will, the VE indicated that the surveillance monitor jobs would remain available. (R.12 at PageID.84.) The VE also stated that his testimony was consistent with the DOT but that the DOT does not mention use of a cane or anything about jobs that would have sit-stand options. (R.12 at PageID.84.) If such a person were off-task 20% of the day or absent four days per month, all work would be precluded. (R.12 at PageID.85.)

### F.  Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513. "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both acceptable and non-acceptable sources provide evidence to the Commissioner, often in the form of

opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id*. When acceptable medical sources issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Certain opinions of a treating physician receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §

404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. [1] The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d); SSR 96-2p, 1996 WL 374188, at *1-2 (July 2, 1996). The ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the person's RFC, or the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to a treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Rogers*, 486 F.3d at 242.

For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp.

---

[1] As Plaintiff's claim was filed before March 27, 2017, she continues to receive the benefit of the "treating source rule" found in § 404.1527. For claims filed on or after that date, the rules in § 404.1520c apply instead. 20 C.F.R. § 404.1527.

637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

The claimant must provide evidence establishing his or her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The RFC "is the most he [or she] can still do despite his limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2).

In accordance with Social Security Ruling (SSR) 16-3p, an ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering her testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in the Ruling. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn from it—formerly termed a credibility determination[2]—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc.*

---

[2] **Error! Main Document Only.**Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g.*, *Cooper v. Comm'r of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL 2928021, at *6 n.3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

*Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

### G. Analysis

Plaintiff argues the ALJ erred: (1) in assessing what weight should be given to the opinion of a treating doctor (Dr. Vaidya); (2) in finding unskilled sedentary sit stand option; and (3) in finding Plaintiff not credible. (R.16.)

### 1.        Treating Source Rule

Plaintiff contends that the ALJ never states anywhere in the opinion what weight was given to the opinion of Dr. Vaidya, the treating orthopedic surgeon. Plaintiff notes that the opinion limited Plaintiff to standing a total of 30 minutes per 8 hour day, sitting a total of 4 hours per workday, and no stooping, crouching or squatting. (R.16 at PageID.453.)

ALJs use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(c).

I note, at the outset, that the ALJ discusses Dr. Vaidya's medical assessment of ability to do work related activities in her opinion and she thoroughly summarizes and discusses the notes made by Dr. Vaidya and Dr. Dougherty. (R.16 at PageID.53-54.) Although the ALJ does not use the magic words "little" or "some" or "no" weight, she does state that the "limitations identified on this form [medical assessment of Dr. Vaidya]

13

underestimate the claimant's functioning in light of the treatment notes from Dr. Vaidya and Dr. Dougherty. (R.16 at PageID.54.) There is no error in the manner in which the ALJ described the weight given. As to the substance of the decision to afford Dr. Vaidya's opinion less than controlling weight, although Plaintiff argues that the ALJ failed "to articulate specific and legitimate reasons" I suggest that the record belies this argument.

The ALJ summarized the medical evidence with relevant details. (R.16 at PageID.51-53.) Following this, the ALJ considered the "off-work" notes from both Dr. Vaidya and Dr. Dougherty, recognizing that those notes were temporary and not indicative of the entire period at issue, but also noting that Plaintiff was returned to work with sedentary-level restrictions as of May 2016. (R.16 at PageID.53.) The ALJ agrees that a sedentary work restriction "is well supported by the longitudinal treatment record showing extremity injuries that were responsive to treatment." (*Id.*) The ALJ further noted that although Plaintiff continued to have pain when walking, she "remained neurologically intact, had improved range of motion to the right knee and was instructed to walk 40 minutes for exercise." (*Id.*) The ALJ then found that Plaintiff "requires greater limitations including the need for a sit or stand option and cane for ambulation." (*Id.*) The ALJ relied on notes from Plaintiff's treating doctors allowing her to bear weight "as tolerated without the use of an assistive device and had uncomplicated healing to the pelvic fracture." (R.16 at PageID.54.) I suggest that the ALJ properly considered the medical evidence, the opinion of Dr. Vaidya, and articulated sufficient reasons for adopting some but not all of the restrictions proffered by Dr. Vaidya. I therefore find that the ALJ's conclusions are in

14

compliance with the regulations governing treating sources and supported by substantial evidence.

## 2.      Unskilled sedentary work with a sit stand option

Plaintiff complains that the ALJ's limitation to jobs with a sit-stand option was flawed because the ALJ did not "stat[e] the duration of the sitting and standing and [Plaintiff] would need a hand held devise [sic] for all ambulation." (R.16 at PageID.457.) Plaintiff contends that "if she requires the use of a cane at all times when standing, she would not be able to exercise the sit/stand option." (*Id.*)

As to the duration or frequency required for position changes argument, the ALJ required, in the hypothetical, that Plaintiff would have the option to sit or stand "at will." (R.16 at PageID.51.) Plaintiff further argues that this the "at will" option is the most restrictive of all the sit/stand limitations (R.16 at PageID.458.) On the other hand, Defendant notes that "most restrictive" is not synonymous with "work-preclusive." (R.19 at PageID.488.) In addition, the ALJ addressed whether the job market would be eroded by the addition of cane use along with the sit/stand option and the VE indicated that the surveillance monitor jobs would remain available. (R.12 at PageID.84.)

As to Plaintiff's argument that she would not be able to make use of the sit/stand option because of her use of a cane, Plaintiff cites no authority finding sit/stand options inconsistent with use of a cane and research has revealed no such rulings. Although Plaintiff has not lodged an attack based on the ALJ's reliance on surveillance monitor jobs at Step Five, I suggest that Plaintiff's failure to raise this issue at the administrative hearing would waive any such arguments, had they been raised here. *Kepke v. Comm'r of Soc. Sec.*,

636 F. App'x 625, 637 (6th Cir. 2016).

### 3.    Plaintiff's Complaints of Pain

Plaintiff contends that the ALJ failed to properly assess her symptoms and complaints of pain. An ALJ must consider the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in SSR 96-7p, 1996 WL 374186 (July 2, 1996) and SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). Assessments of a claimant's subjective complaints rest with the ALJ, *see Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987), and generally cannot be disturbed absent a "compelling reason," *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 16-3p, 2017 WL 5180304, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 16-3p, 2017 WL 5180304, at *3; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he

16

or she is] disabled." 20 C.F.R. § 404.1529(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

  (i)    [D]aily activities;
  (ii)   The location, duration, frequency, and intensity of . . . pain;
  (iii)  Precipitating and aggravating factors;
  (iv)   The type, dosage, effectiveness, and side effects of any medication .
         . . taken to alleviate . . . pain or other symptoms;
  (v)    Treatment, other than medication, . . . received for relief of . . . pain;
  (vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

Plaintiff specifically argues that the ALJ wrongly found that Plaintiff "has 'overall improvement'" because "Plaintiff needs additional surgery to remove the plate and the hardware in her right knee." (R.16 at PageID.459.) To the contrary, Plaintiff testified that her doctor "doesn't want to remove it [plate] because the plate is not what's stopping the flexion in the knee. It's the scar tissue." (R.12 at PageID.77.) Plaintiff also contends that the ALJ's finding that Plaintiff's lower extremity injuries were "responsive to treatment" is inconsistent with the fact that "Plaintiff's knee is frozen at 60 degrees and she needs further surgery[.]" R.16 at PageID.459.) As indicated above, Plaintiff indicated surgery was not an option. Further, I suggest that the ability to only flex the knee 60 degrees is not directly inconsistent with Plaintiff having benefited from some response to treatment. The

ALJ did not find that her knee was completely normal and functional or he would not have fashioned such a restrictive RFC.

The ALJ considered the chronology of medical evidence regarding Plaintiff's motor vehicle accident on January 20, 2015, noting the sever tibial, right distal femur and pelvic fractures that resulted from the accident. (R.12 at PageID.52.) The ALJ reviewed the notes from the Rehabilitation facility which showed "ongoing issues with right knee mobility" and "pelvic pain when sitting" but also noted that Plaintiff was otherwise "progressing as expected and doing well in physical therapy." (*Id.*) Plaintiff transitioned from use of a walker or wheelchair to weight bearing by August 2015 and clinic notes in October and November recorded that Plaintiff was "walking well and neurologically intact" despite a "continued reduced range of motion to the right knee." (*Id.*) Fractures of the femur were healed by May 2016 and although she had difficulty with stairs, by July 2017, Plaintiff's knee "extension was improved from previous visits and she retained full knee strength." (R.12 at PageID.53.) There were no treatment records after April 2017. (*Id.*) Finally, the ALJ noted that Plaintiff's physicians recommended she return to work with sedentary restrictions as of May 2016. (*Id.*) Although Plaintiff was never prescribed a cane, the ALJ found that Plaintiff "requires greater limitations including the need for a sit or stand option and cane for ambulation." (*Id.*)

I suggest that the ALJ's determinations regarding the limiting effects of Plaintiff's symptoms are supported by substantial evidence cited by the ALJ in making his assessment as reiterated above. I further suggest that his findings are supported by a review of the medical evidence. In April 2015, although Dr. Vaidya recognized that more work needed

to be done to increase the range of motion in Plaintiff's right knee to 90 degrees, the doctor also noted that the patient was reporting pain at 5 out 10 and that another goal was "to start weaning her off of her pain medication." (R.12 at PageID.277-78.) In June 2015, the doctor noted that Plaintiff's "pelvis is not bothersome" although Plaintiff remained unable to flex her knee beyond 60 degrees. (R.12 at PageID.286.) Plaintiff "was told that this means to be her last prescription for such high-dose pain medications and she needs to start decreasing the amount of pain medications that she takes." (R.12 at PageID.287.) In February 2016, it was noted that Plaintiff's "physical therapist believes she may have plateaued in her improvements." (R.12 at PageID.325.) In June 2016, Plaintiff's incisions were "well-healed" and it was noted that Plaintiff "lacks 5 degrees of full extension" but had "5/5 strength grossly throughout the right lower extremity" and that "[s]ensation is intact" except for "a minor numbness over the right lateral side of the knee." (R.12 at PageID.290.) All of the above evidence is consistent with overall healing and improvement that the ALJ noted in her decision.

In sum, I suggest the ALJ adequately discussed the factors in 20 C.F.R. § 404.1529(c)(3) and that substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms and complaints of pain.

### H.  Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, (R. 16), be **DENIED**, the Commissioner's Motion for Summary Judgment, (R. 19), be **GRANTED**, and this case be **AFFIRMED**.

III.   **REVIEW**

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub*, 829 F.2d at 1373. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 9, 2019                          S/ PATRICIA T. MORRIS
                                             Patricia T. Morris
                                             United States Magistrate Judge


## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: July 9, 2019                           By s/Kristen Castaneda
                                             Case Manager


21