UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORONDA S. SANDERS,                              Case No. 18-12399

        Plaintiff,                       SENIOR U.S. DISTRICT JUDGE
v.                                               ARTHUR J. TARNOW

COMMISSIONER OF SOCIAL SECURITY,                 U.S. MAGISTRATE JUDGE
                                                 PATRICIA T. MORRIS
        Defendant.

_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [16], GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19], ADOPTING THE REPORT AND RECOMMENDATION [22], AND OVERRULING PLAINTIFF'S OBJECTIONS [23]**

Plaintiff, Coronda Sanders, applied to the Social Security Administration for disability and disability insurance benefits on May 9, 2015. Her initial application was denied, and she opted to proceed with a hearing in front of an Administrative Law Judge ("ALJ"). On February 27, 2018, ALJ Latanya White Richards determined that Ms. Sanders was not disabled within the meaning of the Social Security Act. That decision was affirmed by the Social Security Administration's Appeals Council on June 11, 2018. On August 2, 2018, Ms. Sanders brought this suit pursuant to 42 U.S.C. § 1383(c)(3), which provides federal courts with jurisdiction to review decisions denying claimants Social Security Disability benefits for lack of disability.

Ms. Sanders' case was assigned to Magistrate Judge Patricia T. Morris for determination of non-dispositive motions pursuant to 28 U.S.C. § 636(b)(1)(A) and issuance of a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B) & (C). [Dkt. # 3]. Plaintiff filed her Motion for Summary Judgment [16] on February 7, 2019. Defendant filed his Motion for Summary Judgment [19] on March 15, 2019. On July 7, 2019, the Magistrate Judge issued an R&R [22] recommending that Defendant's motion be granted, and Plaintiff's motion be denied. Plaintiff filed timely objections, to which Defendant has responded.

For the reasons stated below, the Court **OVERRULES** the Objections [23] and **ADOPTS** the R&R [22]. Plaintiff's Motion for Summary Judgment [16] is **DENIED**. Defendant's Motion for Summary Judgment [19] is **GRANTED**.

## FACTUAL BACKGROUND

Ms. Sanders is a 45-year-old woman who alleges that she became disabled following a car accident on January 21, 2015. (Tr. 50-51). Following this accident, Ms. Sanders received surgical treatment for pubic, femoral, tibial, and fibulal fractures. (Tr. 52). As a result of these injuries, she developed arthrofibrosis and suffers from limited range of motion in her right knee. (Id.). Though she has undergone extensive physical therapy, Ms. Sanders still walks with a cane and suffers from pain throughout the day. (Tr. 52-53).

The Court adopts the Magistrate Judge's recitation of Ms. Sanders' application reports and administrative hearing.

i.    Plaintiff's Function Report

Plaintiff competed an adult function report on June 2, 2016. (R.12 at PageID.196- 203.) In the report, Plaintiff indicated that she is able to care for her personal needs except that she needs help putting on her right shoe and socks, and she uses a commode because a regular toilet is too low. (R.12 at PageID.197.) She does not need any special reminders and is able to cook frozen meals and make sandwiches on a daily basis for between thirty minutes to one hour. (R.12 at PageID.198.) Although Plaintiff can wipe counters and sinks, she needs help taking the trash out, vacuuming, and dusting. (R.12 at PageID.198.) She does not do yard work because she "can't stand long enough." (R.12 at PageID.199.) Plaintiff does not drive but is able to ride in a car, and she shops in stores for household items once a week for about one hour at a time. (R.12 at PageID.199.) Plaintiff does not need any help with finances. (Id.) Plaintiff indicated she does not have any hobbies and was unsure whether there have been any changes in such activities since her conditions began. (R.12 at PageID.200.) Plaintiff socializes by going to appointments, to the store, and to church. (Id.) Plaintiff indicated that she "stay[s] home more now due to my physical disability to get out and also due to the pain I suffer on a daily basis." (R.12 at PageID.201.) Plaintiff has no difficulties paying attention or dealing with authority figures or co-workers. (R.12 at PageID.201-02.) Plaintiff summarized that the hardware in her right leg "prevents it from bending correctly at the knee, it lock[s] at a point and it will not move any farther. The pain I suffer from some days will not allow me to get out of bed. Sometimes for several hours until the pain clams down." (R.12 at PageID.203.)

ii.   Plaintiff's Testimony at the Hearing

An administrative hearing was held in Plaintiff's case on September 27, 2017. (R.12 at PageID.60-86.) Plaintiff testified that she is 5 feet, 3 inches tall and weighs 240 pounds. (R.12 at PageID.65.) Plaintiff has a driver's license and drove herself to the hearing; she also drives to her doctors' appointments and the store. (R.12 at PageID.66.) Plaintiff lives alone in an apartment and received workers compensation benefits until

May of 2017. (R.12 at PageID.66-67, 73.) Plaintiff's alleged onset date (January 21, 2015) corresponds to the date she was involved in a car accident which resulted in a hospitalization and two months of rehabilitation. (R.12 at PageID.67-68.) Before her accident, Plaintiff worked as a group home manager, caring for the developmentally disabled. (R.12 at PageID.68.) Plaintiff suffered a broken pelvis, a degloving injury, and has "a lot of metal in [her] right leg, like, from the ankle to the hip, a lot of metal." (R.12 at PageID.69.) Plaintiff followed up with physical therapy for some time and she currently takes pain medications. (R.12 at PageID.69-70.) Plaintiff indicated that she sometimes gets drowsy because of the medication. (R.12 at PageID.70-71.) Plaintiff is able to cook light meals and grocery shop but needs help from her family with vacuuming, laundry, and other cleaning. (R.12 at PageID.71-72.)

Plaintiff estimated that she could stand comfortably for about 15-20 minutes, sit comfortably for "at least 30 minutes," and walk for about half of a city block. (R.12 at PageID.73-75.) Plaintiff stated that she uses a cane "for distance" but "can move around the house without it." (R.12 at PageID.75.) Plaintiff's hypertension is under control with medications and her CPAP machine has resolved her sleep apnea issues. (R.12 at PageID.75-76.)

Pursuant to her attorney's questions, Plaintiff testified that because of scar tissue in her knee, she cannot bend her knee beyond 60 degrees, making it very difficult to pick things off the floor. (R.12 at PageID.76-78.) Her pelvic pain is worsened by sitting too long so she lies down "between five and six times" for "20 to 30 minutes" per day to relieve the pain. (R.12 at PageID.78-79.) Plaintiff was prescribed and uses a shower chair. (R.12 at PageID.79.) Plaintiff sometimes misses church because she is very stiff, "like, paralyzed for a while" in the morning due to pain. (R.12 at PageID.80.) Plaintiff's doctor told her, as to pelvic pain, "pretty much I am where I'm going to be with that." (R.12 at PageID.81.)

iii.     The Vocational Expert's Testimony at the Hearing

VE Don Harrison also testified at the hearing. (R.12 at PageID.82-85.) He began by classifying Plaintiff's past work as a group home manager as heavy, SVP 5. (R.12 at PageID.82.) Then the ALJ posed the first hypothetical:

> a hypothetical individual of the Claimant's age education with that past work you described. Please assume the individual is limited to sedentary work. They can occasionally climb ramps and stairs, but

cannot climb ladders or scaffolds. They cannot kneel, crouch, or crawl. They can occasionally stoop. They must avoid use of hazardous machinery and exposure to unprotected heights, and avoid balancing on narrow, slippery, or moving surfaces. And they - - and no commercial driving.

The VE testified that such a person could not perform any of Plaintiff's past relevant work. (R.12 at PageID.83.) The VE also stated that such a person could perform other jobs in the national economy such as bench assembler, DOT 739.687- 066 (75,000 jobs), optical inspector, DOT 716.687-030 (70,000 jobs), and surveillance monitor, DOT 379.367-010 (63,000 jobs). (Id.) When asked if those jobs would also be available for someone who also needed a cane to ambulate and an option to sit or stand at will, the VE indicated that the surveillance monitor jobs would remain available. (R.12 at PageID.84.) The VE also stated that his testimony was consistent with the DOT but that the DOT does not mention use of a cane or anything about jobs that would have sit-stand options. (R.12 at PageID.84.) If such a person were off-task 20% of the day or absent four days per month, all work would be precluded. (R.12 at PageID.85.)

R&R 6-9.

## STANDARD OF REVIEW

The Court conducts de novo review of objections to a Magistrate Judge's Report and Recommendation on a dispositive motion. 28 U.S.C. § 636(b)(1)(c).

Judicial review of a decision by a Social Security ALJ "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 534 (6th Cir. 2001) (internal quotation marks omitted). A reviewing court will affirm the

Commissioner's decision if it is based on substantial evidence, even if there is also substantial evidence to support the opposite conclusion. *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007). On the other hand, the substantial evidence standard "does not permit a selective reading of the record," as the reviewing court's assessment of the evidence supporting the ALJ's findings "must take into account whatever in the record fairly detracts from its weight." *McLean v. Comm'r of Soc. Sec.,* 360 F. Supp. 2d 864, 869 (E.D. Mich. 2005) (quoting *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)). Further, "[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole,* 661 F.3d at 937 (internal quotation marks and citations omitted).

## ANALYSIS

Plaintiff argued that the ALJ acted contrary to governing law in three ways. First, the ALJ broke the treating source rule by discounting the medical opinion of Dr. Vaidya. Second, the ALJ did not adequately account for Plaintiff's need alternate between sitting and standing at will. Third. The ALJ improperly discounted Ms. Sanders' subjective account of her own pain. The Magistrate Judge considered and rejected all three of these arguments, and Plaintiff objected to her analysis of all three issues.

1. Treating Source Rule

Plaintiff was treated by Rahul Vaidya, M.D. at the Detroit Receiving Orthopedic Clinic from July 19, 2016 to April 12, 2017. (Tr. 365-387). On April 11, 2017, Dr. Vaidya completed a *Medical Assessment of Ability to do Work Related Activities (Physical)* form. (Tr. 388-391). On that form, Dr. Vaidya indicated that Plaintiff could only stand or walk for 30 minutes total and sit for four hours total out of an eight-hour workday, that she would likely miss more than four workdays per month because of her condition, and that she would experience constant interference in her concentration due to her pain. (Id.; see also Tr. 17).

The ALJ, while recognizing that Dr. Vaidya was Ms. Sanders' treating orthopedic surgeon, found that "the limitations identified on this form underestimate the claimant's functioning in light of the treatment notes from Dr. Vaidya and Dr. Dougherty." (Tr. 17). The ALJ observed that the treatment notes found that Ms. Sanders had been bearing weight without use of an assistive device and that her pelvic fracture was healing without complications. (Id.). There were no reports of concentration or attention difficulties in the treatment notes. (Id.). The ALJ found that "the overall evidence of record only partially supports claimant's allegations." (Id.). Ms. Sanders was observed to have a normal gait in April of 2017, and her treating doctors recommended that she walk for 40 minutes per day to alleviate the

muscle strain in her back. (Id.). Further, Plaintiff testified that she lives alone and engages in grocery shopping, meal preparation, and driving. (Id.).

ALJs use the six-factor balancing test outlined in 20 C.F.R. § 404.1527(c) to determine the probative value of medical opinions from acceptable sources. The ALJ's discussion of Dr. Vaidya's medical assessment notes consider the examining relationship, the specialization of the treating source, the treatment relationship, and its length, frequency, and extent. (Tr. 16-17). The ALJ largely accepts Dr. Vaidya's diagnoses and treatment observation, and she specified a Residual Functional Capacity ("RFC") for Ms. Sanders that requires "sedentary work with significant postural and environmental limitations, as well as the need for a sit or stand option and a cane for ambulation." (Tr. 17).

Where the ALJ discounts specific opinions of Dr. Vaidya, she does so in line with the § 404.1527(c) factors. The ALJ found that Dr. Vaidya's opinion on the "off-work" notes were "temporary in nature and related to the claimant's post-operative healing, as opposed to the claimant's functioning during the entire period at issue." (Id.). She also found that certain answers on the *Medical Assessment of Ability to do Work Related Activities (Physical)* form were inconsistent with and unsupported by Dr. Vaidya's own treatment notes and the medical record as a whole. As the Magistrate Judge noted, the AJ found that the record indicated that Ms. Sanders

"remained neurologically intact," could walk for over 40 minutes, and had been responsive to treatment since her post-accident surgeries. (R&R 14).

Plaintiff's main objection to Magistrate Judge's analysis seems to be that the ALJ erred by omitting "the magic words" of "little," "some" or "no" weight to describe how much she relied on Dr. Vaidya's opinion. As a preliminary matter, since the ALJ accepted Dr. Vaidya's treatment notes, but rejected his answers to the form questionnaire and the conclusions of his "off-work" notes, she did not assign a single level of credibility to all of his statements and opinions. She judged specific medical opinions in context of the broader medical record. There is no statutory requirement that an ALJ assign specific levels of weight to treating source physicians, and cases like this demonstrate why such a rule would be cumbersome and unhelpful.

Moreover, there is no authority for the proposition that a qualitative description of the weight an ALJ gives to a treating source must be made explicit. The Sixth Circuit has held that ALJs need not "label the amount of weight given to each treating physician's view or list the factors in 20 C.F.R. § 404.1527(d)." *Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 725 (6th Cir. 2004). The ALJ showed "familiarity with the regulatory framework" and provided substantial evidence in accordance with the requirements of § 404.1527(c) & (d) for her decision to discount

certain statements of Dr. Vaidya regarding Ms. Sanders' ability to concentrate, sit for long periods of time, and walk for over thirty minutes. *See id.*

2. Alternating Sitting and Standing Work

Plaintiff next argues that the jobs she was expected to perform would be difficult for someone who needed to use a cane to stand, and who needed to constantly alternate between sitting and standing. Plaintiff cite *Wages v. Sec'y of Health & Human Servs.*, 755 F.2d 495 (6th Cir. 1985) for the proposition that a claimant cannot perform the full range of sedentary work if she must alternate between sitting and standing. *Id.* at 498–99. The *Wages* court found that the ALJ erred by using a grid to find that claimant was automatically capable of sedentary jobs despite the fact that she needed periodically to stand up.

The ALJ in this case, by contrast, did not rely on a grid, but instead gave the vocational expert an RFC that provided that Plaintiff must be allowed to sit and stand at will. "[B]ased on the combination of her obesity and pelvic pain when sitting and leg pain on standing, the [ALJ] has accommodated the claimant with a sit stand option at will while remaining on task." (Tr. 17). When the ALJ asked the vocational expert if surveillance monitor jobs allowed workers to sit or stand at will, the vocational expert answered yes. (Tr. 42). The ALJ further noted that although she does not believe that the record supports Ms. Sanders' need for a cane, she has restricted Plaintiff to work requiring a cane for walking. (Tr. 17). The Magistrate

Judge was correct to conclude that the ALJ had substantial evidence to conclude that Ms. Sanders was capable of performing at least some jobs in the national economy.

3. Plaintiff's Accounts of Her Pain

The Magistrate Judge found that the ALJ's determinations regarding the limiting effects of Plaintiff's symptoms, including her pain, are supported by substantial evidence, especially objective evidence of gradual healing between 2015 and 2017. (R&R 18). Plaintiff argues in response that the Magistrate Judge erred by failing to consider 1) evidence that the ALJ distorted the record by overreliance on Plaintiff's account of her daily activity and 2) evidence that her knee was "stuck" at 60 degrees of flexion. Neither of these objections is persuasive.

First, Plaintiff does not articulate what these "distortions of the record" are, or why they matter. Plaintiff did in fact testify that she sometimes goes to the supermarket and engages in light cleaning or cooking. (Tr.34-35). Plaintiff leaves this argument off cryptically by noting that the "multiple examples Plaintiff articulated in regard to the distortion of the record" are "set forth in Plaintiff [sic] brief and do not need to be rehashed." (Dkt. 23 pg. 7). This is not a proper objection to an R&R, for Plaintiff does not allege specific problems with the Magistrate Judge's discussion of the ALJ's findings in regard to Plaintiff's daily routines. This Court is not obligated to address such a general restatement of Plaintiff's Motion for Summary Judgment. *See Funderburg v. Comm'r of Soc. Sec.*, 2016 WL 1104466 *

1 (E.D. Mich. Mar. 22, 2016).  Objections that merely rehash a party's arguments on Summary Judgment "undermine the purpose of the Federal Magistrate's Act, 28 U.S.C. § 636, which serves to reduce duplicative work and conserve judicial resources." *Owens v. Comm'r of Soc. Sec.*, 2013 WL 1304470, at *3 (W.D. Mich. Mar. 28, 2013).

Second, Plaintiff argues that her knee is "frozen" at 60 degrees. (Dkt. 23 pg. 8). Plaintiff references Dr. Vaidya's January 4, 2017 Orthopedic Clinic notes, which state that Plaintiff could not return to work and "will need surgery to remove her plate and manipulate her knee which is stuck at 60 degrees of flexion." (Tr. 362-63). This opinion was belied by Ms. Sanders' September 27, 2017 testimony before the ALJ. There, the ALJ asked about Dr. Vaidya's recommendation of surgery, and Ms. Sanders responded that the doctor "doesn't want to remove it because the plate is not what's stopping the flexion of the knee. It's the scar tissue." (Tr. 40). Ms. Sanders went on to describe how her knee is stuck at 60 degrees. (Tr. 41).

An ALJ must evaluate complaints of disabling pain by evaluating whether the objective evidence on the record verifies the severity of the pain. 20 C.F.R. § 404.1529(c)(2) & (3). The Magistrate Judge found that the ALJ did just that. The ALJ emphasized Ms. Sanders' uncomplicated post-operative healing, the description of her gait as normal in April of 2017, and her daily activities—including domestic chores, shopping and occasional driving—when she found that the record

only partially supports claimant's allegations. (Tr. 17). This is consistent with the most recent treatment notes available on the record. The April 12, 2017 report performed by Dr. Farley and verified by Dr. Vaidya noted that Ms. Sanders had complained that she was experiencing a nagging pain in her groin when she walked. (Tr. 382). Dr. Farley found that Plaintiff's "chronic pains are most likely due to her muscle strains and that the best treatment would be exercise." (Tr. 383). Plaintiff was told that it was not safe to continue to take narcotic medications, and that she should begin to take Motrin for pain, attempt to walk for 40 minutes each day, and refrain from returning to work for three months. (Tr. 383).

As the Magistrate Judge noted, the ALJ did in fact incorporate significant musculoskeletal limitations into Ms. Sanders' RFC description. Her decision to find that Plaintiff's range of motion in her knee was limited, but not nonexistent, was consistent with substantial evidence in the record, including the April 12, 2017 Orthopedic Clinic treatment notes and Plaintiff's September 27, 2017 testimony.

## CONCLUSION

The Magistrate Judge did not err when she determined that the ALJ based her findings on substantial evidence from the record. Plaintiff's first objection fails because the ALJ properly discounted statements by the treating position that conflicted with the broader record, consistent with the factors of 20 C.F.R. § 404.1527(c). Plaintiff's second objection fails because an at-will sit or stand option

was built into her RFC. Plaintiff's third objection fails because the ALJ properly discounted Plaintiff's subjective accounts of her pain and knee flexibility in light of the objective medical evidence and other evidence, as required by 20 C.F.R. § 404.1529(c)(2) & (3).

Accordingly,

**IT IS ORDERED** that the Report and Recommendation [22] is **ADOPTED** and, except as otherwise noted, entered as the conclusions and findings of the Court. Plaintiff's Objections to the R&R [23] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [19] is **GRANTED**. Plaintiff's Motion for Summary Judgment [16] is **DENIED**.

**SO ORDERED**.


                                        s/Arthur J. Tarnow
                                        Arthur J. Tarnow
Dated: August 22, 2019                  Senior United States District Judge